1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
8     WESTERN DISTRICT OF WASHINGTON
9                    AT TACOMA

10   TONJA MARIE CURTIS,

11                  Plaintiff,                    CASE NO. 12-cv-5245-JRC

12          v.                                    ORDER ON PLAINTIFF'S
                                                  COMPLAINT
13   MICHAEL J. ASTRUE, Commissioner
14   of the Social Security Administration,

15                  Defendant.

16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United

20   States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.

21   12, 16, 17).

22          After considering and reviewing the record, the Court concludes that the ALJ

23   failed to evaluate the medical evidence properly. The ALJ failed to give specific and

24

legitimate reasons for his failure to credit opinions from multiple examining doctors of plaintiff.

Therefore, this matter shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

<u>BACKGROUND</u>

Plaintiff, TONJA MARIE CURTIS, was born in 1985 and was twenty-two years old on her alleged date of disability onset of March 9, 2007 (*see* Tr. 19, 120-31). She has past relevant work experience as a cashier and poultry dresser (*see* Tr. 27, 45-47). However, the ALJ noted that plaintiff had "been fired from past jobs for being too slow, making mistakes, and being high on methamphetamine" (*see* Tr. 23). Plaintiff "stopped using drugs in 2005 but relapsed on alcohol in May 2010" (*id.*; *see also* Tr. 41). The ALJ noted that plaintiff used an inhaler for asthma and was trying to quit smoking (*see* Tr. 23).

Plaintiff claims that she is disabled due to a combination of impairments, including depression; anxiety; learning disorder; borderline intellectual functioning; bipolar; post-traumatic stress syndrome; obesity; diabetes; and asthma (*see* ECF No. 12, p. 2). The ALJ found that plaintiff's obesity; diabetes; asthma; depression; anxiety; and learning disorder were severe impairments (*see* Tr. 21). Plaintiff has taken medication for diabetes which can cause weight gain; and is 5'5" tall and weighs 240 pounds (*see* Tr. 23, 39-41). Although the ALJ found that plaintiff's borderline intellectual functioning was not a medically determinable impairment, he indicated that "her intellectual abilities are factored into the residual functional capacity determination herein [in the ALJ's written

decision]" (*see* Tr. 22). Plaintiff testified that she had difficulty learning things; was easily confused; and easily overwhelmed when depressed (*see* Tr. 23; *see* Tr. 52-53).

<u>PROCEDURAL HISTORY</u>

On October 17, 2008, plaintiff filed an application for a period of disability and disability insurance benefits pursuant to Title II ("DIB"), and an application for supplemental security income pursuant to Title XVI ("SSI"), of the Social Security Act (*see* Tr. 19, 65, 122-31). Her applications were denied initially and following reconsideration (Tr. 70-73, 78-81). Plaintiff's requested hearing was held before Administrative Law Judge Steve Lynch ("the ALJ") on October 15, 2010 (Tr. 36-63). On October 28, 2010, the ALJ issued a written decision in which he concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 16-29).

On January 27, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision on March 19, 2012 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on May 25, 2012 (*see* ECF Nos. 9, 11). In her Opening Brief, plaintiff contends that the ALJ did not evaluate properly the medical opinions of Dr. Charles Quinci, Ph.D.; Dr. Robert Schneider, Ph.D.; Dr. Michael Brown, Ph.D.; or Dr. Stephen S. Meharg, Ph.D. (*see* ECF No. 12, pp. 4-6). Plaintiff also argues that the ALJ failed to evaluate properly plaintiff's testimony and credibility (*see id.* at pp.15-18).

1

STANDARD OF REVIEW

2

Plaintiff bears the burden of proving disability within the meaning of the Social

3

Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

4

the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

5

172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

6

(9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

7

disability as the "inability to engage in any substantial gainful activity" due to a physical

8

or mental impairment "which can be expected to result in death or which has lasted, or

9

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

10

§§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

11

impairments are of such severity that plaintiff is unable to do previous work, and cannot,

12

considering plaintiff's age, education, and work experience, engage in any other

13

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

14

1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

15

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

16

denial of social security benefits if the ALJ's findings are based on legal error or not

17

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

18

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

19

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

20

such "'relevant evidence as a reasonable mind might accept as adequate to support a

21

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.

22

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

23

24

389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra,* 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121,  2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra,* 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion

1   when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App.

2   LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinseki v.*

3   *Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

4                                    <u>DISCUSSION</u>

5       1.  **The ALJ failed to evaluate properly the medical evidence**.

6       The ALJ must provide "clear and convincing" reasons for rejecting the

7   uncontradicted opinion of either a treating or examining physician or psychologist.

8   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

9   1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

10  a treating or examining physician's opinion is contradicted, that opinion "can only be

11  rejected for specific and legitimate reasons that are supported by substantial evidence in

12  the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035,

13  1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

14  thorough summary of the facts and conflicting clinical evidence, stating his interpretation

15  thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v.*

16  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

17      In addition, the ALJ must explain why his own interpretations, rather than those of

18  the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849

19  F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence

20  presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

21  1984) (per curiam).  The ALJ must only explain why "significant probative evidence has

22  been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion generally is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at 752).  "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20 C.F.R. § 404.1527(d)(2)(i).

a.  Dr. Charles Quinci, Ph.D.

Dr. Quinci examined plaintiff twice (*see* Tr. 361-69, 425-33). He conducted a Mental Status Examination ("MSE") on both occasions.   The ALJ gave "significant weight" to the first opinion of Dr. Quinci, based on his July, 2009 examination of plaintiff (*see* Tr. 25). However, the ALJ did not credit fully Dr. Quinci's opinion that plaintiff suffered from moderate limitations in her ability to relate to coworkers and supervisors; tolerate work pressures; and maintain appropriate behavior (*see* Tr. 25 (*citing* Exhibit 10F, *i.e.*, Tr. 364)). Instead, the ALJ in his residual functional capacity assessment ("RFC") explicitly found that plaintiff "can take appropriate precautions in a work setting, and can interact appropriately with supervisors and coworkers" (*see* Tr. 23).

1  The ALJ did not explain this discrepancy or why he rejected Dr. Quinci's opinion on this

2  subject (*see id.*).

3         However, according to Social Security Ruling ("SSR") 96-8p, a residual

4  functional capacity assessment by the ALJ "must always consider and address medical

5  source opinions. If the RFC assessment conflicts with an opinion from a medical source,

6  the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996

7  SSR LEXIS 5 at *20. Although "Social Security Rulings do not have the force of law,

8  [n]evertheless, they constitute Social Security Administration interpretations of the

9  statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882

10 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th

11 Cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we

12 defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the

13 [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467

14 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356).

15

16        Therefore, the Court concludes that the ALJ erred by failing to explain why he did

17 not adopt limitations opined by Dr. Quinci based on Dr. Quinci's first examination of

18 plaintiff in July, 2009. *See Quang Van Han*, *supra*, 882 F.2d at 1457; *see also* SSR 96-8p,

19 1996 SSR LEXIS 5 at *20.

20        The ALJ explicitly gave only "little weight" to the opinion by Dr. Quinci on April,

21 2010 (*id.*). The ALJ provided only one reason for failing to credit fully this opinion: "it is

22 not consistent with his findings on mental status examination" (*id.* (*citing* Exhibit 16F,

23 *i.e.*, Tr. 424-32).

24

Dr. Quinci observed that plaintiff presented with an anxious mood but her psycho-motor activity was within normal limits (*see* Tr. 431). Plaintiff recalled only two out of three items after a delay, although Dr. Quinci assessed that her memory was intact (*id.*). Dr. Quinci assessed that plaintiff's fund of knowledge was "fair" (*id.*). Although Dr. Quinci did not indicate on his report the questions asked of plaintiff, he also assessed that her judgment was fair and her insight likewise was fair (*id.*). At this second examination on April 15, 2010, Dr. Quinci opined that plaintiff's prognosis was "guarded" (Tr. 232).

As indicated by the ALJ, among other opinions regarding plaintiff's ability to work, Dr. Quinci opined in April, 2010 that plaintiff suffered from marked limitations in her ability to exercise judgment and make decisions; moderate limitations in the ability to perform routine tasks and interact with the public; and marked limitations in the ability to tolerate work pressures (*see* Tr. 25; *see also* Tr. 428).

In his written decision, the ALJ noted the following MSE results:

> On examination the claimant was well groomed, pleasant and cooperative. Affect was appropriate with good eye contact. Mood was anxious but psychomotor activity and speech were both normal. Thought processes were logical and content appropriate. She was fully oriented and memory was intact. No impairment in cognitive functioning was noted. Judgment and insight were fair (internal citation to exhibit 16F).

(*see* Tr. 25).

The ALJ failed to explain how these MSE findings demonstrate an inconsistency with the functional limitations assessed by Dr. Quinci sufficient to give them "little weight" (*id.*). In addition, Dr. Quinci indicated when he opined on plaintiff's overall level of functioning that he was basing his assessment on his own observations as well as the

MSE results and plaintiff's self reported symptoms (*see* Tr. 427; *see also* Tr. 428 (indicating his observation "per MSE and interview")).

The Court also notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *See Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

When mental impairments potentially include symptoms of emotional instability, the opinions of examining and treating mental health practitioners particularly are

important, and may be based on factors not readily apparent from a review of the treatment record. *See id.*; *see also Blankenship v. Bowen*, *infra*, 874 F.2d 1116, 1121 (6th Cir. 1989). Demonstrating that fact here, Dr. Quinci indicated explicitly that plaintiff's "labile mood affects concentration" (*see* Tr. 428). Additionally relevant here, Dr. Quinci indicated that plaintiff "had difficulty sustaining effort of tasks, timeliness is a problem, attendance inconsistent, social functioning poor" (*see id.*).

As noted previously, Dr. Quinci, as a trained psychologist, provided specific functional opinions regarding plaintiff's ability to function in a work environment that were rejected by the ALJ, including his opinions that plaintiff suffered from; (1) marked limitations in her ability to exercise judgment and make decisions; (2) moderate limitations in the ability to perform routine tasks and interact with the public; and (3) marked limitations in the ability to tolerate work pressures (*see* Tr. 25; *see also* Tr. 428). Dr. Quinci's functional opinions were rejected based on a finding of lack of consistency with the MSE, however, the ALJ mentioned only a few of the MSE results, known to Dr. Quinci, and did not explain how the ALJ's findings, that differed from Dr. Quinci's, were more correct than Dr. Quinci's opinions.

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *See Reddick, supra*, 157 F.3d at 725; *see also Blankenship, supra*, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the

psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)); *Smith v. Astrue*, 2012 U.S. Dist. LEXIS 61640 at *11 (W.D. Wash. April 4, 2012) (unpublished opinion) (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

Based on the relevant record and for the reasons stated, the Court concludes that the ALJ failed to provide specific and legitimate reasons based on substantial evidence in the record for his failure to credit fully Dr. Quinci's opinions. *See Magallanes, supra*, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"). Dr. Quinci's opinions regarding plaintiff's ability to function in a work environment are relevant directly to the determination of plaintiff's RFC, making the errors in reviewing Dr. Quinci's opinions harmful.

For the reasons stated and based on the relevant record, the Court concludes that this matter must be reversed and remanded to the Commissioner for further consideration.

1     b.  Dr. Robert Schneider, Ph.D.

2         Dr. Schneider examined plaintiff in February, 2008 (*see* Tr. 264-76). He

3   conducted an examination and conducted numerous psychological tests (*see* Tr. 269-71).

4   He indicated his impressions as follows:

> There are many significant barriers to successful employment. The most
> prominent is her slowness. This individual is extraordinarily slow. She is
> slow to think, slow to respond and slow to perform any activity.  . . . .
> Academic skills are limited and intellectual abilities are also quite
> limited. These barriers may make it impossible for her to succeed in the
> open labor market. Intensive treatment with psychotropic medications is
> certainly recommended to alter her pace.

(Tr. 270).

         The ALJ provided the following discussion regarding the opinion of Dr.

Schneider:

> The claimant underwent a psychological evaluation in February 2008.
> Robert F. Schneider, Ph.D. indicated she was slow to think, slow to
> respond, and slow to perform any activity. Academic skills and
> intellectual abilities were quite limited. He assessed a GAF of 39. He
> opined she would be slow to understand and follow simple and multi-
> step instructions and slow to perform tasks. She would be very sensitive
> to the pressures and demands of gainful employment. She was capable of
> getting along with others. He opined she was mildly limited in the ability
> to understand, remember and follow simple instructions and moderately
> limited with complex instructions. She was moderately limited in the
> ability to learn new tasks and markedly limited in the ability to exercise
> judgment and perform routine tasks. She was mildly limited in the ability
> to relate to coworkers and supervisors and moderately limited in the
> ability to relate to the public. She was moderately limited in the ability to
> respond to normal work pressures and maintain appropriate behavior
> (internal citation to Exhibit 1F). The opinion of Dr. Schneider is given
> little weight as the treatment record reflects significant improvement
> shortly after his evaluation.

(Tr. 24, 270, 276).

ORDER ON PLAINTIFF'S COMPLAINT - 13

Although the ALJ found that plaintiff's record demonstrates that she experienced significant improvement from Dr. Schneider's February, 2008 evaluation, Dr. Schneider's opinion from 2008 has much similarity to Dr. Quinci's opinion from April 15, 2010. For example, Dr. Schneider indicated that plaintiff would be slow to think and perform tasks in a work environment, and Dr. Quinci, in April, 2010 indicated explicitly that plaintiff's "labile mood affects concentration" and that plaintiff "had difficulty sustaining effort of tasks, timeliness is a problem, attendance inconsistent, social functioning poor" (*see* Tr. 428).

Similarly, Dr. Schneider opined in March, 2008 (based on his late February, 2008 evaluation) that plaintiff "would be very sensitive to the pressures and demands of gainful employment" and found her to be moderately impaired in this ability (*see* Tr. 276). Notably, Dr. Quinci subsequently opined that plaintiff was worse off in this area, in that she suffered from marked impairment in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, on April 15, 2010 (*see* Tr. 428).

In addition, the Court notes that the record as described by the ALJ suggests responses to medication that required regular adjustment due to side-effects, and results that were up and down, as opposed to the "good response to medications" and "significant improvement" that was found by the ALJ (*see* Tr. 24, 292). The ALJ included the following discussion in his written decision:

> The claimant was prescribed Abilify for bipolar disorder in March 2008 (internal citation to Exhibit 3F-13). At a follow-up visit she reported the medication was working well. Her mood was better and her racing

thoughts were much better (internal citation to Exhibit 3F-12). May 2008 treatment notes reflect she was "doing great" (internal citation to Exhibit 3F-6). However, in June she reported the medication made her feel like a zombie. She was switched to Geodon (internal citation to Exhibit 3F-5). Celexa was later added to her medication regimen. In July 2008, she reported she was doing well and was getting out more and visiting with people (internal citation to Exhibit 3F-3). The claimant's allegation that she is essentially bedridden by depression much of the time is not consistent with treatment records revealing good response to medications.

(Tr. 24).

The Court notes that plaintiff's reports to her medical provider indicate that she was having mood shifts in which she will have "a lot of energy and then will all the sudden (sic) she will have depression afterward" (*see* Tr. 300). On the occasion cited by the ALJ in which plaintiff reported that her mood was better and that her racing thoughts were better, the record also indicates her report that she still had "periods where she is feeling jittery and cannot sit for very long" (*see* Tr. 299). Similarly, on the occasion cited by the ALJ in which she was "doing great," plaintiff also had indicated that she was feeling "a little bit blah" (*see* Tr. 293). Although plaintiff reported that Geodon was helping more than the Abilify that she had been taking, she still was getting "sad for no good reasons during the day" (*see* Tr. 291). For the reasons stated and based on the relevant record, the Court concludes that the ALJ's findings that plaintiff experienced "significant improvement" and that she was experiencing "good response to medications" were not findings based on substantial evidence in the record as a whole. *See Magallanes*, *supra*, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a

preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'").

In addition, the Court concludes that the ALJ's reliance on treatment records for the finding that plaintiff was doing well or that her medication was working well was not based on substantial evidence in the record as a whole, given the record in this case. The Court makes this conclusion "because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity" in this circumstance here. *See Hutsell v. Massanari*, 259 F.3d 707, 712-13 (8th Cir. 2001) (other citation omitted).

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ failed to provide specific and legitimate reasons based on substantial evidence in the record as a whole for his failure to credit fully opinions from Dr. Schneider. The medical opinion of Dr. Schnieder should be evaluated anew following remand of the matter, as should the ALJ's finding that plaintiff demonstrated improvement after Dr. Schneider's opinion in 2008.

c.  Dr. Michael Brown, Ph.D.

Dr. Brown examined plaintiff and conducted a MSE as well as other tests (*see* Tr. 391-403). He indicated numerous opinions regarding plaintiff's ability to function in a work environment, including that plaintiff was moderately limited in her ability to exercise judgment and make decisions; and that she was markedly limited in her abilities

1   to respond appropriately to and tolerate the pressures and expectations of a normal work

2   environment (*see* Tr. 24, 394).

3        Based on the relevant record and because the Court already has decided that this

4   matter must be reversed and remanded for further consideration, *see supra*, sections 1.a,

5   1.b, the Court concludes that the opinions of Dr. Brown should be evaluated anew

6   following remand of this matter (*see* Tr. 24-25).

7       d.  Dr. Stephen S. Meharg, Ph.D.

8        The ALJ failed to mention Dr. Meharg's assignment of a global assessment of

9   functioning ("GAF") of 48 (*see* Tr. 390). Because the opinions of examining and treating

10   medical sources regarding the functional abilities of claimants generally are very relevant

11   information, the assignment of a GAF indicating serious symptoms or impairments often

12   will be information that must be discussed by an ALJ when making the determination

13   regarding the disability status of a claimant. *See Vincent*, *supra*, 739 F.2d at 1394-95

14   (*quoting Cotter*, *supra*, 642 F.2d at 706-07); *see also Graham v. Astrue*, 385 Fed. Appx.

15   704, 705, 2010 U.S. App. LEXIS 13177 at \*\*3 (9th Cir. 2010) (per curiam) (unpublished

16   opinion) ("the GAF scores are nonetheless relevant") (*citing Rollings v. Massanari*, 261

17   F.3d 853, 857 (9th Cir. 2001)).

18        For this reason and because the Court already has concluded that this matter must

19   be reversed and remanded for further consideration, the Court also concludes that Dr.

20   Meharg's assignment of a GAF of 48 should be discussed explicitly following remand of

21   this matter, *see supra*, sections 1.a, 1.b.

ORDER ON PLAINTIFF'S COMPLAINT - 17

1

2      2.   **Plaintiff's credibility and testimony must be assessed anew following**

3           **remand of this matter**.

4      The ALJ's credibility determinations "must be supported by specific, cogent

5   reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In

6   evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must

7   specifically identify what testimony is credible and what evidence undermines the

8   claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting*

9   *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick,*

10  *supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

11  Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility

12  evaluation," including the claimant's reputation for truthfulness and inconsistencies in

13  testimony, and may also consider a claimant's daily activities, and "unexplained or

14  inadequately explained failure to seek treatment or to follow a prescribed course of

15  treatment." *Smolen, supra*, 80 F.3d at 1284; *see also Verduzco v. Apfel,* 188 F.3d 1087,

16  1090 (9th Cir. 1999) (reliance on inconsistent statements concerning drug use proper).

17      The determination of whether or not to accept a claimant's testimony regarding

18  subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929;

19  *Smolen, supra*, 80 F.3d at 1281 (*citing Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).

20  First, the ALJ must determine whether or not there is a medically determinable

21  impairment that reasonably could be expected to cause the claimant's symptoms. 20

22  C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82.  Once a claimant

23

24

1   produces medical evidence of an underlying impairment, the ALJ may not discredit the

2   claimant's testimony as to the severity of symptoms "based solely on a lack of objective

3   medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*,

4   947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at

5   1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must

6   provide specific "clear and convincing" reasons for rejecting the claimant's testimony.

7   *Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722 (*citing Lester v.*

8   *Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th

9   Cir. 1989)).

10

11          Here, the ALJ failed to credit fully the testimony and credibility of plaintiff (*see*

12   Tr. 24). The ALJ provided a number of reasons for this determination, including a finding

13   that plaintiff's testimony was inconsistent with her treatment records demonstrating a

14   good response to her medication (*see* Tr. 24-27). The ALJ also relied on plaintiff's

15   activities of daily living when failing to credit fully her allegations and testimony (*see* Tr.

16   26).   The ALJ included the following discussion in his written decision:

17
          Treatment records reflect a more active lifestyle than the claimant alleges.
18        Although the claimant testified she has not worked since March 2007,
          treatment records reflect she worked as a babysitter in 2008 (internal
19        citation to Exhibit 2F-4). In August 2009, she reported falling while getting
          on a ride at the county fair (internal citation to Exhibit 19F-34). Although
20        she testified she cleans her apartment only for inspections, she told Dr.
          Alvord that she kept things quite tidy (internal citation to Exhibit 4F). She
21        has participated in water aerobics (internal citation to Exhibit 18F-19). She
          has attended school and reports she aspires to be a mental health counselor
22        or dental hygienist (internal citation to Exhibit 18F-41). These activities are
          not consistent with the debilitating symptoms she describes.
23

24   (Tr. 26).

ORDER ON PLAINTIFF'S COMPLAINT - 19

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603).

It is true, as plaintiff argues, that daily activities like water aerobics and attending school courses do not necessarily translate into a diminished credibility and a reason to fail to credit fully a claimant's allegations, because they do not translate necessarily to transferable work skills. *See Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). However, the ALJ here also indicated that plaintiff's activity of baby-sitting in 2008 was inconsistent with her statement that she had not worked since 2007 (*see* Tr. 26 (*citing* Exhibit 2F-4, *i.e.*, Tr. 281)) and that her testimony that she only cleaned her apartment for inspections was inconsistent with the indication in the record that she kept her place quite tidy (*see* Tr. 26 (*citing* Exhibit 4F, *i.e.*, Tr. 301-07, specifically, Tr. 303)).

When a claimant's activities of daily living contradict her other testimony, it is proper to rely on this fact when making credibility determinations regarding whether or not her allegations about her limitations from her impairments should be credited fully. *See Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). However, here, it is

not evident that a statement that plaintiff had not worked was inconsistent with the fact that she had been babysitting to an extent that plaintiff's credibility properly was diminished. Minors who are not allowed "to work" pursuant to law regularly babysit, and many individuals who "only" watch children may indicate that they do not "work" without impinging their credibility necessarily.

In addition, and perhaps more importantly, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). This Court already has determined that this matter must be reversed and remanded for further consideration as a result of errors in the evaluation of the medical evidence, *see supra*, section 1. Therefore, plaintiff's credibility and testimony must be assessed anew following remand of this matter.

3. **This matter should be remanded for further administrative consideration, not for a direction to award benefits**.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate in order to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's credibility and residual functional capacity. *See Sample, supra*, 694 F.2d at 642.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

<u>CONCLUSION</u>

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 30th day of January, 2013.

J. Richard Creatura
United States Magistrate Judge